PEOPLE v JONES

Docket No. 78-4387. Submitted December 12, 1979, at Detroit.—Decided July 1, 1980.

Mearl E. Jones was convicted of larceny in a building, Wayne Circuit Court, William L. Cahalan, J. Defendant appeals, alleging 1) evidence presented to the jury of his intent to permanently deprive a store owner of its property was insufficient as a matter of law, 2) admission of statements defendant made to the police after his arrest constituted error, and 3) the court erred in allowing the use of defendant's criminal conviction record for the purpose of impeachment. *Held:*

1. The law does not require that the term "permanently deprive" be understood literally. Lack of purpose to return the property within a reasonable time is sufficient. There was ample evidence from which the trier of fact could determine that intent existed.

2. The trial court did not err in admitting defendant's statements to the police after determining that he had been apprised of and had voluntarily waived his rights.

3. The trial court properly exercised its discretion in determining that the probative value of evidence of defendant's prior convictions on the issue of credibility outweighed any prejudicial effect and allowing their admission for impeachment.

Affirmed.

M. J. CAVANAGH, J., concurred in the result, agreeing there was no abuse of discretion by the trial court in admitting evidence of defendant's prior convictions, but disagreeing with the statement by the majority concerning the frequency of perjury by defendants in criminal trials as being a factually unsound generalization providing an inappropriate guideline for future cases.

REFERENCES FOR POINTS IN HEADNOTES
[1] 50 Am Jur 2d, Larceny § 36.
[2-5] 29 Am Jur 2d, Evidence § 327.

OPINION OF THE COURT

1. LARCENY — WORDS AND PHRASES — CRIMINAL INTENT.

The law on larceny does not require that the term "permanently deprive" be understood literally; lack of purpose to return property taken within a reasonable time is sufficient.

2. CRIMINAL LAW — EVIDENCE — CROSS-EXAMINATION — PREJUDICIAL EFFECT — PROBATIVE VALUE — WITNESSES — IMPEACHMENT — RULES OF EVIDENCE.

Mention of a defendant's past crimes for purposes of impeachment during cross-examination is barred unless the prejudicial effect is outweighed by the probative value on the issue of credibility (MRE 609[a][2]).

3. CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS — PREJUDICIAL EFFECT — PROBATIVE VALUE — WITNESS CREDIBILITY — RELEVANCY — IMPEACHMENT.

The similarity of a prior conviction to the offense charged increases its prejudicial effect and is a factor to be weighed against its use for impeachment, but its probative value also increases on the issue of credibility because of the similarity, and it is relevant for purposes of impeachment.

4. CRIMINAL LAW — EVIDENCE — PREJUDICIAL EFFECT — PROBATIVE VALUE — PRIOR CONVICTIONS — DEFENSES.

The trial court, in attempting to balance the prejudicial effect and the probative value on credibility of proffered evidence of a defendant's prior convictions, should consider, among other factors, the effect such evidence will have on 1) the testimony of the defendant and other witnesses, 2) a claim of good character by the defendant or his witness, and 3) the probability of a defense of diminished capacity, mistake, ignorance or accident.

5. CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS — MISDEMEANORS — IMPEACHMENT — STATUTES — RULES OF EVIDENCE.

Evidence of prior convictions for misdemeanors involving theft, dishonesty or false statement may be used for purposes of impeachment (MRE 609[a][1]).

6. CRIMINAL LAW — EVIDENCE — ABUSE OF DISCRETION — PRIOR CONVICTIONS — IMPEACHMENT.

A trial court will not be held to have abused its discretion in admitting evidence of a defendant's prior convictions for the purpose of impeachment unless the result of such admission is so palpably and grossly violative of fact and logic that it evidences perversity of will, defiance of judgment, or is based on passion or bias rather than the exercise of reason.

CONCURRENCE BY M. J. CAVANAGH, J.

7. CRIMINAL LAW — EVIDENCE — COURTS — ABUSE OF DISCRETION —
PRIOR CONVICTIONS.

Admission of evidence of a defendant's prior convictions is not
improper where there was no abuse of discretion by the trial
court.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward R. Wilson,* Principal
Attorney, Appeals, and *Rita Chastang,* Assistant
Prosecuting Attorney, for the people.

*Bernstein, Rabinovitz & Weitzman, P.C.,* for de-
fendant on appeal.

Before: M. J. KELLY, P.J., and M. F. CAVANAGH
and P. C. ELLIOTT,* JJ.

P. C. ELLIOTT, J. Defendant appeals of right from
his conviction, by a jury, of larceny in a building,
MCL 750.360; MSA 28.592. He was sentenced to
prison for two to four years.

## FACTS

Defendant and a woman entered a jewelry store
and asked to see wedding rings. While the woman
tried to distract the salesman, the salesman and
the cashier saw defendant lean over and grab an
expensive diamond ring through the opened door
in the back of a showcase. "Give me that ring,"
the salesman demanded. "What ring? I don't have
a ring," defendant said. When the salesman yelled
to the cashier, "Call the police," defendant passed
something from his hand to the hand of the
woman, who then ran from the store. Defendant
quickly followed her. Several hours later the miss-

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

ing ring was found in the parking lot and returned by an honest woman, Elizabeth Hands.

The trial judge conducted a very patient and thorough inquiry before ruling that defendant's statements to the police were admissible. Defendant had falsely denied that he had signed a Miranda warning card and falsely claimed that he had been beaten. In his statement, defendant said he and his girlfriend were looking at rings when he was accused of taking one. He denied it and left. After his statement, he offered to take the police to her apartment. On the way there, he asked the detective what he would do for him and said he wanted to be released. When he was told that the detective couldn't make any promises, defendant refused to take the police to his accomplice.

Four years earlier, defendant had been arrested and convicted of larceny in a building. Later plea-bargaining reduced two separate breaking and entering charges to another conviction of larceny in a building and a conviction of attempted larceny in a building. The trial judge denied defendant's motion to bar use of his three prior convictions for impeachment; the motion was made after the *Walker*[1] hearing and before the trial began. The trial judge referred to MRE 609 and noted that thefts are especially relevant to veracity.

Defendant chose not to testify and no evidence was presented in his behalf. In his final argument, defense counsel contended that the jury could not find that defendant "intended to permanently deprive the owner of its property".

Three claims are made on appeal:

I. Evidence of an intent to permanently deprive was insufficient as a matter of law.

---

[1] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

II. Admission of defendant's statements was error.

III. The court erred in allowing use of defendant's three prior convictions for impeachment.

## I. LARCENOUS INTENT

The only logical and reasonable inference to be drawn from the proven actions of the defendant and his accomplice is that they intended to steal the ring they took.

It has become popular to refer to the "intent to steal" which is necessary to larceny as the "intent to permanently deprive the owner of his property". See chapter 23 of the proposed Michigan Criminal Jury Instructions. Unless there is evidence indicating an intention to return the property taken or that otherwise suggests that an intent to steal did not exist, the phrase "intent to steal" is really more accurate and more easily understood than the phrase that describes the mental element as the "intent to permanently deprive". Everyone, including jurors, basically understands the meaning of the commandment: "Thou shalt not steal." The chances are that some of the jurors have been tempted to steal something, sometime, themselves.

In the first place, at the time of a theft, the thief is only selfishly intent on his own personal gratification. Deprivation to a victim is a result, but it is not the purpose of a theft. Often the thief does not know who owns the stolen property and, usually, he does not care what happens to the victim. Because the thief is probably not thinking: "I want to permanently deprive the owner of this property," it is misleading to say that such a state of mind is an essential element of any larceny.

Secondly, the law does not require, in a literal

sense, that a thief have an intent to *permanently*
deprive the owner of the property. CJI Commen-
tary, 23-11, observes:

"[O]ne may assume that as in other jurisdictions
'intent to deprive permanently' means in application
'lack of purpose to return the property with reasonable
promptitude and in substantially unimpaired
condition.' "

The current proposed revision of our criminal
code, House Bill 4842, Section 3201(h), shows how
much the words "permanently deprive" must be
defined to get the phrase close to the true meaning
of the word "steal". Sec 3201(h) says:

" 'Permanently deprive' means doing any of the fol-
lowing: (i) Withholding property or causing property to
be withheld from a person permanently or for such an
extended period or under such circumstances, so that a
significant portion of the property's economic value or
of the use and benefit of the property is lost to the
person. (ii) Disposing of the property in a manner which
makes it unlikely that the owner will recover the
property. (iii) Retaining the property with the intent to
restore the property to the owner only if the owner
purchases or leases it back or pays a reward or other
compensation for the property's return. (iv) Selling,
giving, pledging, or otherwise transferring any interest
in the property. (v) Subjecting the property to the claim
of a person other than the owner."

In the case before us, however the intent is
labeled, there was ample evidence from which a
jury could find that it existed although Mrs. Hands
found the ring in the parking lot later in the day.

## II. DEFENDANT'S STATEMENTS TO THE POLICE

The standard of review of the ruling permitting

use of a defendant's statements, admissions or confessions is stated in *People v Crawford,* 89 Mich App 30; 279 NW2d 560 (1979). Rather than a definite and firm conviction that the trial judge erred, which would be necessary for us to reverse the trial judge, we have an independent conviction that he correctly assessed defendant's claims of police brutality and forgery as lies. We commend the trial judge for his initiative in obtaining evidence from a hospital and from a handwriting expert and for his patience during the hearing and trial.

### III. THE MRE 609(A) QUESTION

#### A. *Some General Observations*

The purpose of the criminal justice process is to protect society, and accuracy should be its chief goal. The purpose of the rules of evidence, as stated in MRE 102, is "* * * to the end that truth may be ascertained and proceedings justly determined". Perjury is the enemy of truth and accuracy. Perjury occurs often in criminal trials, especially by the defendant, who has the most to gain by it. The proper application and interpretation of the rules of evidence must come to grips with that fact.

MRE 609(a)(2) requires the judge to bar mention of a defendant's past crimes during his cross-examination unless the prejudicial effect of the disclosure is outweighed by the probative value of his record on the issue of credibility. There is a ten year limit on all convictions, juvenile court histories cannot be used, and use of convictions for misdemeanors : is forbidden unless the misdemeanor is especially relevant to veracity because it involves dishonesty, false statement or theft.

If the criminal conviction record that is the subject of an MRE 609(a) motion is extensive, it will indicate the defendant is a serious recidivist, a professional criminal. Often the series of convictions to be considered are for the same type of crime as the offense charged, because some professional criminals specialize in a particular crime. Armed robberies, narcotics sales, shoplifting, passing forged checks, burglaries or other criminal activity may become a life style. A professional criminal is apt to be a chronic liar. See Yochelson & Samenow, *The Criminal Personality* (New York: Jason Aronson, Inc., Vol I, 1976, Vol II, 1977).

When the defendant testifies, the trial often becomes a contest as to who is telling the truth. A defendant's testimony will usually disparage or contradict the evidence against him. Frequently the issue of credibility is a comparison of the believability of the alleged victim or of an eyewitness with the defendant's denial. Suppression of the defendant's usable conviction record clothes him with a false and undeserved impression of good character that may be given great weight by the jury.

*People v Baldwin*, 405 Mich 550; 275 NW2d 253 (1979), held that the similarity of a prior conviction to the offense charged increases its prejudicial effect and is a factor to be weighed against its use for impeachment. But frequently the probative value of a conviction, or series of convictions, is increased, proportionally or greater, on the issue of credibility because of that similarity. The principles underlying MRE 404(b) may bear upon the credibility issue, depending in part on the nature of the defense defendant's testimony presents, even if the similarities are not great enough so that the evidence would qualify under that rule.

When a victim says "He did it!" and the defendant says "I didn't," or "I was so drunk I didn't mean to," or even "I was ten miles away at the time," it is relevant to the central issue of who is telling the truth that the defendant has been guilty of similar criminal conduct before, perhaps repeatedly. Both the prejudicial effect and the probative value on the issue of credibility are because of the true fact of life, based on human experience and fundamental to human insight, that it is more probable that a person has committed a crime if he has done it before, maybe several times. A jury should not be deprived of that information simply because the crimes are similar or because the criminal record is extensive. When it comes to whom to believe, it should not benefit the defendant that he is a repeater, perhaps specializing in this kind of crime, or that his record is so bad that it will weigh heavily against him. After all, he committed the previous crimes and they tell a great deal about him and about whether he is lying now.

We recognize that a defendant may wish to have a ruling on the MRE 609(a) question in advance of the trial. It may affect whether the defendant will testify and, therefore, defense counsel's jury voir dire and the timing and content of his opening statement. However, the judge is in no position, in most cases, to rule on the question (except tentatively) until he has heard the prosecution's proofs and learned, out of the hearing of the jury, the substance of defendant's proposed testimony and has some idea of what other proofs defendant will present. That information is necessary to a balancing of the factors MRE 609(a) says the judge must weigh. The judge has no crystal ball with which to foretell prejudicial effect or probative value on

credibility. The following questions are a partial
list of factors crucial to the balancing required of
the court: (1) Will the defendant's testimony di-
rectly contradict the testimony of one or more key
prosecution witnesses? When the trial becomes a
credibility contest, background information about
the disputants is essential to a jury. (2) Will the
defendant claim or imply good character, by his
own testimony or by a character witness, that his
hidden record would refute? MRE 609 does not
entitle a defendant to "pull the wool" over the
jury's eyes. (3) Will the defendant claim a defense
such as diminished capacity due to intoxication,
mistake, ignorance or accident that becomes far
less probable in the light of his prior criminal
conduct? A claim by a defendant, for example,
that he left the store without paying for an item
because he forgot he had put it in his pocket does
not go over so well when it becomes known, on
cross-examination, that the defendant has been
convicted of several thefts before.

When the judge waits to find out what the
theory of the defense is before finally ruling on the
MRE 609(a) question, that question may become
moot because evidence of prior convictions will be
available to the prosecution through MRE 404(b),
concerning similar acts, or MRE 405 and MRE
608, concerning character evidence; and, if not, the
policies behind those rules may influence the MRE
609(a) issue. In some cases, defense counsel will
make a MRE 609(a) motion *in limine* although the
defendant has nothing reasonable to say in his
own defense and will not testify regardless of the
ruling. He may prefer a ruling against him to gain
an appealable issue out of a hopeless trial. If the
judge requires a preview of defendant's proposed
testimony, the motion may be dropped.

MRE 609 is a modified version of Rule 609 of the Federal Rules of Evidence which grew out of case law developed in *Luck v United States,* 121 US App DC 151, 156, fn 7; 348 F2d 763 (1965), and *Gordon v United States,* 127 US App DC 343; 383 F2d 936 (1967). *Luck* advocated "the operation of a sound judicial discretion to play upon the circumstances as they unfold in a particular case", and observed that "a trial judge cannot be expected to give preliminary rulings which will foreclose him completely as the trial progresses * * *". *Gordon* recognized that before the trial judge decides whether and to what extent impeachment by prior convictions should be permitted, he might have to listen to the defendant's testimony outside the hearing of the jury. A recent Federal case, *United States v Cook,* 608 F2d 1175, 1186 (CA 9, 1979), said:

"In future cases, to preserve the issue for review, a defendant must at least, by a statement of his attorney: (1) establish on the record that he will in fact take the stand and testify if his challenged prior convictions are excluded; and (2) sufficiently outline the nature of his testimony so that the trial court, and the reviewing court, can do the necessary balancing contemplated in Rule 609."

*United States v Oakes,* 565 F2d 170, 171-172 (CA 1, 1977), said:

"Defendant could be asked to state the substance of his testimony in advance. Should defendant mislead the court, the court may later change its ruling and let the record in if otherwise admissible. A defendant will not thereafter be heard to complain of any resulting prejudice created by his own actions. *Cf. Jeffers v United States,* 432 US 137, 150, 97 S Ct 2207, 53 L Ed 2d 168 (1977). Indeed, a court's advance ruling might still be

helpful even if made expressly provisional, allowing the
court greater leeway to change it in light of later events
and testimony."

Michigan recognizes that convictions involving
theft, dishonesty or false statement are especially
probative on the issue of who is telling the truth;
therefore the Michigan rule permits use of such
convictions although misdemeanors. Such convic-
tions (although perhaps not all thefts) *shall* be
admitted under Rule 609 of the Federal Rules of
Evidence. A Federal judge could not exclude them.
Although a Michigan trial judge could prevent
impeachment use of crimes involving dishonesty,
falsity, or theft if, in his discretion, he finds the
prejudicial effect outweighs the probative value on
the issue of credibility, if the Michigan judge
decides otherwise, because of the obviously great
probative value of such crimes, his decision can
hardly be considered an abuse of discretion.

*Gordon, supra,* 940, said:

"In common human experience acts of deceit, fraud,
cheating, or stealing, for example, are universally re-
garded as conduct which reflects adversely on a man's
honesty and integrity."[9]

---

[9] "The reason for exposing the defendant's prior record is to attack
his *character* to call in question his reliability for truth-telling * * *."

---

The standard for appellate review of a MRE
609(a) ruling by a trial judge who recognizes his
discretion and the factors to be balanced is stated
in *People v Worden,* 91 Mich App 666, 675-676;
284 NW2d 159, 164-165 (1979):

"The decision concerning the admission of evidence of
a conviction for the purpose of impeachment is ad-
dressed to the trial court's discretion. Its decision may

only be reversed upon a finding that the discretion granted to it was abused. *People v Merritt,* 396 Mich 67, 80; 238 NW2d 31 (1976). The term 'abuse of discretion' was defined in *Spalding v Spalding,* 355 Mich 382, 384-385; 94 NW2d 810 (1959), as:

" 'Where, as here, the exercise of discretion turns upon a factual determination made by the trier of the facts, an abuse of discretion involves far more than a difference in judicial opinion between the trial and appellate courts. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'

"The discretion granted the trial court in this instance concerns the weighing of the probative value of evidence of a defendant's prior conviction against the prejudicial effect introduction of such evidence will have. The exercise of this discretion envisions a decision by the trial court based upon its evaluation of the given fact situation, rather than the application of any rigid legal standard, and the *Spalding* standard should be utilized to determine whether its discretion was abused."

It is difficult to imagine how an abuse of discretion can be found on review when the trial judge, who accurately realizes his function under MRE 609(a), finds that the probative value on the issue of credibility of criminal convictions involving theft, dishonesty or false statement outweighs their prejudicial effect, regardless of how many or how similar they may be.

## B. *This Case*

In this case the trial judge recognized his func-

tion and exercised his discretion. The motion was
made in advance of trial, right after the *Walker*
hearing. At that hearing, the judge listened to
defendant's claims of police forgery and brutality
and must have concluded they were false when he
decided that defendant had waived his *Miranda*[2]
rights and made a statement that was voluntary.
Thus the judge had good reason to expect more
perjury of the defendant, if he testified. Defense
counsel did not assert that the defendant would
testify if his record were suppressed, and neither
defendant nor his lawyer said what his testimony
would be. What could it be? He was distinctly seen
by two eyewitnesses stealing the ring; surely he
would have to dispute them. He had already ad-
mitted to the police that he and his girlfriend were
present and accused of the theft. The trial judge
referred to MRE 609 and permitted use, for im-
peachment, of defendant's three convictions, all
recent, because they involved theft, a kind of
dishonesty which would be especially probative of
where the truth lies in this case. We cannot say
that the court's ruling was wrong, much less an
abuse of discretion, although the convictions were
for the same or similar crimes.

A judge who refers on the record to MRE 609(a)
and quotes language in subparagraph (1) of that
rule must be credited with recognition and perfor-
mance of the function imposed upon him by sub-
paragraph (2) of that rule when he decides the
suppression motion. Incorporation of the control-
ling law into the court's determination by specific
reference to the governing rule satisfies, surely,
the previous requirement that "the trial court
'must positively indicate and identify its exercise

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10
ALR3d 974 (1966).

of discretion' " reiterated in *People v West,* 408 Mich 332, 340; 291 NW2d 48 (1980), if that holding applies to trials conducted after March 1, 1978, the effective date of Michigan's Rule of Evidence. *West* reviewed a 1976 trial.

Affirmed.

M. J. KELLY, P.J., concurred.

M. F. CAVANAGH, J. *(concurring).* I concur with my brothers that defendant's conviction should be affirmed. I do so separately, however, because I do not agree with the majority's "Some General Observations" of the MRE 609(a) question. The statement by the majority that, "Perjury occurs often in criminal trials, especially by the defendant who has the most to gain by it", is a generalization which I feel is factually unsound and hardly an appropriate guideline for those charged with the responsibility of rendering an impartial determination of guilt or innocence. As I find no abuse of discretion in the trial court's admission of evidence of prior convictions in this case, I would affirm.