*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ALBERT MONTEZA SMITH IV,

        Defendant-Appellant.

FOR PUBLICATION
March 11, 2021

No. 349900
Livingston Circuit Court
LC No. 18-025394-FC

Before: SWARTZLE, P.J., and RONAYNE KRAUSE and RICK, JJ.

RONAYNE KRAUSE, J. *(dissenting)*

I respectfully dissent. I agree with the majority's recitations of the facts and of the applicable standard of review. I fully concur with the majority's reasoning and conclusion that carjacking is a specific intent crime. I also agree that an actor's intent may be adequately proved by circumstantial evidence and inferences drawn from that evidence. However, although there is clearly sufficient evidence to support a finding that defendant generally intended to drive away in the police vehicle, I find no evidence on this record to support a finding that defendant specifically intended to retain or permanently deprive the police of that vehicle. I respectfully conclude that the former does not, by itself, establish the latter.

Ordinarily, only the trier of fact may resolve conflicts in evidence. *Nichol v Billot*, 406 Mich 284, 301-302; 279 NW2d 761 (1979). The jury is free to pick and choose which pieces of evidence to believe or disbelieve, and how to put those pieces together; however, the jury may not speculate or fabricate nonexistent evidence. *People v Howard*, 50 Mich 239, 242-243; 15 NW 101 (1883); *People v Bailey*, 451 Mich 657, 673-675, 681-682; 549 NW2d 325 (1996). Thus, purely by way of example, our Supreme Court has observed that "doubt about credibility is not a substitute for evidence of guilt." *People v Wolfe*, 440 Mich 508, 519; 489 NW2d 748 (1992). As the majority properly observes, an actor's intent may be proved through circumstantial evidence and inferences drawn from that evidence. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). However, there must actually be some evidence. *Howard*, 50 Mich at 242-243. The courts must ensure that any inferences "have adequate basis in record evidence." *People v Hoffmeister*, 394 Mich 155, 159; 229 NW2d 305 (1975). Thus, although our review of the sufficiency of the evidence is deferential, it is not absolutely deferential.

As the majority outlines, there was ample evidence from which the jury could find that defendant attempted to place the police vehicle into driving operation, with the obvious inference that he intended to use the vehicle to depart from the scene. Thus, he could, possibly, be guilty of unlawfully driving away a motor vehicle, MCL 750.413, which explicitly lacks an intent to steal. See *People v Stanley*, 349 Mich 362, 364-365; 84 NW2d 787 (1957).[1] However, as the majority also outlines, carjacking under MCL 750.529a requires a specific intent to steal.

An "intent to steal" has long been understood to require something more than merely an intent to take without authorization. See *People v Quigley*, 217 Mich 213, 220; 185 NW 787 (1921). Rather, the taking of property must be accompanied by a "felonious intent to deprive the owner of it." *People v Johnson*, 81 Mich 573, 576; 45 NW 1119 (1890). This is generally understood to mean, as the model jury instructions state, an intent to permanently deprive. M Crim JI 23.1(5); see also *Rambin v Allstate Ins Co*, 495 Mich 316, 329-331; 852 NW2d 34 (2014). The phrase "permanently deprive" is not strictly literal and may include "the retention of property without the purpose to return it within a reasonable time or the retention of property with the intent to return the property on the condition that the owner pay some compensation for its return." *People v Harverson*, 291 Mich App 171, 178; 804 NW2d 757 (2010), citing *People v Jones*, 98 Mich App 421, 425-426; 296 NW2d 268 (1980). Nevertheless, the examples of what might constitute permanent deprivation entail doing something affirmative to preclude the rightful possessor from regaining that possession or subjecting the property to a competing claim. *Jones*, 98 Mich App at 426; see also use notes to M Crim JI 23.1.

Thus, to constitute carjacking, it is simply not enough to intend to *take* the vehicle, or even to take the vehicle without a specific plan to return it. Notably, not even the prosecutor appears to believe defendant intended to *keep* the vehicle; as the prosecutor aptly observes, defendant would inevitably have "ditched" the vehicle at some point. There is simply no evidence tending to suggest, or even hint, that defendant attempted to drive the police vehicle away from the scene intending to treat the vehicle as his own. There is likewise no evidence that defendant intended to sell the vehicle, destroy or damage the vehicle, or ransom the vehicle. See *Jones*, 98 Mich App at 426. Furthermore, there is no evidence that defendant intended to "ditch" the vehicle in such a manner that the police would be unlikely to recover it, such as driving it into the woods or a closed garage. It is a matter of common knowledge that police vehicles tend to be somewhat more noticeable than average; "ditching" an ordinary car at the side of the road might present the true owner with some difficulty in recovering it, but it borders on impossible that an abandoned police vehicle would remain "lost" for long unless it is intentionally hidden.

---

[1] I do not mean to suggest that defendant actually is guilty of this offense, which imposes other *mens rea* requirements that defendant may have lacked. The evidence seems undisputed that defendant was not behaving in a manner that might be described as calm and collected. Indeed, as will be discussed, what little can be gleaned from the police dash camera video casts doubt on whether defendant had any coherent mental state at the time. I only point out that an intent to steal is not among those requirements, in contrast to the carjacking charge at issue here.

Indeed, the video footage recorded by a police dash camera suggests that defendant may have had little to no state of mind whatsoever. The camera was, unfortunately, directed away from any interaction between defendant and the officer; and, during that interaction, it only recorded audio from inside the vehicle. Indistinct shouting[2] from outside the vehicle can be heard, but not loudly or clearly enough to understand. The video does depict defendant (or rather, his legs) making a brief and futile attempt to crawl backwards out of the crushed window of his overturned vehicle on the other side from where the officer was shouting. However, whatever else transpired between defendant and the officer is neither depicted nor clearly discernible. It is nevertheless obvious that defendant's vehicle had just suffered a violent rollover, and it is equally obvious that no thought was given by the pursuing officer to the possibility that defendant might have suffered any injury or disorientation as a result. Importantly, there is a brief period captured on the camera's internal audio while defendant was apparently in the driver's seat. Insofar as we can infer from the recording's audio and the shaking of the camera, defendant was inside the vehicle for less than a minute, and any struggle inside the vehicle lasted at most half of that time. At the time of his apparent ingress into the vehicle, the distinctive crackling of a taser can be heard (and someone can be heard shouting either "taser" or "tase him"), while defendant makes literal gibberish noises. Thus, the evidence strongly reflects a person with, at a minimum, no rational plan in mind and probably no meaningful bodily self-control.

As this Court observed, deprivation tends to be the result rather than the true purpose of a theft, and an actor's state of mind must be evaluated accordingly. *Jones*, 98 Mich App at 425. However, as the long history of larceny at common law shows, theft requires more than just a taking. The evidence overwhelmingly shows that, to the limited extent defendant had a state of mind, he intended to flee the scene by whatever means necessary. Thus, even if he nominally intended some kind of taking, any such taking was incidental. Furthermore, evidence that defendant intended to take the police vehicle does not show that he intended to effectuate a deprivation. Rather, under the circumstances, it shows that defendant intended to use it without permission. To establish the requisite intent for carjacking, there must be some affirmative evidence from which a rational trier of fact could infer that defendant intended to take permanent possession of the vehicle or affirmatively interfere with recovery of the vehicle. As noted, merely using it without permission and without a specific plan to effectuate its return is not sufficient. I do not find in this record any evidence that defendant had the requisite specific intent. I would therefore reverse defendant's carjacking conviction.

/s/ Amy Ronayne Krause

---

[2] And, later, a female voice extensively, loudly, and rather shrilly berating defendant.