# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TERRY DEVON WILLIAMS,

Defendant-Appellant.

UNPUBLISHED
November 20, 2014

No. 316772
Wayne Circuit Court
LC No. 12-011352-FH

Before: BORRELLO, P.J., and WILDER and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of carrying a concealed weapon, MCL 750.227, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. The trial court sentenced defendant, as a third habitual offender, MCL 769.11, to 6 to 60 months' imprisonment for the carrying a concealed weapon and felon in possession of a firearm convictions, and 5 years' imprisonment for the felony-firearm conviction. We affirm.

I

This case arises from an arrest occurring on October 27, 2012, in Detroit. Detroit Police Officers Jason Neville and Chad Bristol responded to a report of an argument and shots fired near the intersection of Grandmont and Glendale. The officers testified that they saw defendant standing with a group of five or six other men, holding a rifle in plain view. Officers Neville and Bristol testified that defendant was the only person in the group that they saw with a weapon. Defendant looked at the officers' marked police car and began walking away from the group. Officers Neville and Bristol exited their vehicle and walked after defendant, ordering him to stop and drop his weapon. The officers each testified that defendant discarded the rifle in the grass between the sidewalk and the street, then pulled out a revolver from under the right side of his coat, and dropped the second weapon in the grass. The officers arrested defendant and retrieved the weapons. Officers Neville and Bristol testified that they attempted to speak with the other men in the group at the scene, but they refused to identify themselves and stated that they did not know defendant. At trial, the parties stipulated that defendant was ineligible to possess firearms due to a previous felony conviction.

Defendant's girlfriend, Alpena Davis-Major, and his neighbor, Brenda Williams, testified that defendant was not carrying a weapon at the time of his arrest. They stated that defendant

-1-

approached the group of men to settle an argument, which defendant believed involved his cousin. According to Williams and Major, several other men in the group were armed. Contrary to the testimony of Officers Neville and Bristol that they followed defendant after he walked away from the group, Williams testified that one officer followed defendant and the other officer approached the group.

## II

Defendant argues that there was insufficient evidence to support his convictions. We disagree. This Court reviews sufficiency challenges de novo. *People v Harverson*, 291 Mich App 171, 175-176; 804 NW2d 757 (2010). In reviewing a sufficiency challenge, we view the evidence in a light most favorable to the prosecution and determine whether the jury could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

The charge felon in possession of a firearm requires the prosecution to show: (1) that the defendant is a convicted felon who is prohibited from possessing a firearm, and (2) that he possessed a firearm. *People v Tice*, 220 Mich App 47, 53; 588 NW2d 245 (1996). A felony-firearm charge requires proof: (1) that the defendant carried or possessed a firearm, (2) during the commission or attempted commission of a felony. *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011); see also MCL 750.227b. A felon in possession of a firearm charge can constitute the underlying felony for a felony-firearm conviction. *People v Calloway*, 469 Mich 448, 451-452; 671 NW2d 733 (2003). Finally, carrying a concealed weapon requires: (1) that the defendant carried a concealed pistol or other dangerous weapon on his person, or in a vehicle, whether or not concealed, and (2) did so without a license, (3) unless defendant was in his dwelling house, place of business, or on his own land. *People v Davenport*, 89 Mich App 678, 682; 282 NW2d 179 (1979); see also MCL 750.227.

The evidence was sufficient to support defendant's felon in possession of a firearm, felony-firearm, and carrying a concealed weapon convictions. Officers Neville and Bristol both testified that they saw defendant holding a rifle, which he dropped as he walked away. The officers testified that defendant removed a revolver that had been concealed under his shirt and coat and dropped it gun on the ground as well. The parties stipulated that defendant was ineligible to hold a license for the firearms because he had previously been convicted of a felony.

Defendant's primary challenge to the sufficiency of the evidence is that the prosecution's theory of the case, based on the officers' testimony that they both pursued defendant, who they saw with a rifle, was simply less believable than that of the defense, based on testimony from defendant's girlfriend and neighbor, that defendant was unarmed, he only approached the group to settle the argument, and only one officer pursued defendant while the other officer stayed with the group. But conflicts in the evidence are for the factfinder to resolve, and the jury was "free to believe or disbelieve, in whole or in part, any of the evidence presented." *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999). This Court will not reassess credibility determinations or the inferences drawn therefrom on appeal. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002); *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992).

Defendant also derides the lack of fingerprint evidence or a patrol car video showing that he was holding the weapons, but such additional direct evidence linking defendant to the crime

was unnecessary. Circumstantial evidence along with the reasonable inferences drawn from that evidence can be sufficient proof of criminal liability. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). It is within the jury's province to credit the officers' testimony over that of defendant's girlfriend and neighbor, with or without the benefit of video or forensic proof. Viewed in a light most favorable to the prosecution, the evidence was sufficient for a reasonable trier of fact to find defendant guilty beyond a reasonable doubt.[1]

III

Next on appeal, defendant argues that the trial court committed error requiring reversal by limiting the cross-examination of Officer Bristol regarding whether he had any misgivings about turning his back on the group of men to walk after defendant. We disagree. This Court reviews preserved evidentiary claims for an abuse of discretion. *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003). A decision on a close evidentiary question "by definition ordinarily cannot" constitute an abuse of discretion. *People v Bahoda*, 448 Mich 261, 289; 531 NW2d 659 (1995) (citation omitted). Rather, this Court will find an abuse of discretion only when the trial court "chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Further, any alleged error is subject to review under the harmless error standard, which provides:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice. [MCR 2.613(A).]

Defendant points to the following colloquy from the cross-examination of Officer Bristol by defense counsel:

> *Q*. You are telling us that there were only two of you; right?
>
> *A*. Yes; two officers.
>
> *Q*. And, you left a group standing on the corner, nobody is watching that group, anybody could have shot you in the back or any number of things could have—

---

[1] Insofar as defendant suggests that the prosecutor committed misconduct when she referenced "[t]he People's job" with respect to a criminal defendant, that argument was not preserved below and not properly presented to this Court as an issue on appeal. See *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010) (defense counsel must raise an objection at trial and request a curative instruction); see also MCR 7.212(C)(5) (requiring issues involved to be stated in the Statement of Questions Presented). Nevertheless, it is evident that the "People" to whom the prosecutor was referring were the prosecution and the police officers, not the jury.

*The Court*: We have to deal with this case.

*Defense counsel*: It goes to credibility, Your Honor.

*The Court*: Anything could have happened.

*Defense counsel*: Well, I think it goes to credibility, Your Honor, whether or not a trained police officer would turn his back on a potentially—

*The Court*: So, you say you don't believe him?

*Defense counsel*: I won't get into that. That is [the jurors'] decision whether they believe him or not, but I am cross-examining. If you tell me I should move on, then, I will move on.

*The Court*: He asked could somebody have shot you in the back; and, I said anything is possible.

So where are we, now.

*Defense counsel*: I am waiting for you to tell me what to do.

*The Court*: Move on.

*Defense counsel*: Okay.

*Q*. You were not concerned about what the group was doing, or anything else; is that correct?

*A*. I was certainly concerned. Besides having seen one weapon already, I unholstered my weapon, and Officer Neville and I separated. At least, for me, what I was thinking, I had a different line of sight of people. [Defendant] in front of me as well as the other individuals, as Neville and I separated.

Defendant claims that each officer corroborated the other officer's testimony that they followed defendant and observed him discard two weapons, and on appeal, defendant argues that defense counsel was unfairly precluded from questioning the credibility that testimony. But even though the trial court excluded the question whether anybody in the group could have shot Officer Bristol in the back while the officers pursued defendant, this question was cumulative given defense counsel's next question regarding Officer Bristol's concern about what the group was doing and Officer Bristol's testimony that he and Officer Neville separated and Bristol believed he had a "line of sight" on both defendant and the group. See *People v Gursky*, 486 Mich 596; 786 NW2d 579 (2010). Furthermore, defense counsel had adequate opportunity to question the officers' credibility during his closing argument when he summarized the conflict in the testimony between the officers, who claimed they both followed defendant and saw him drop two weapons, and Williams, who testified that only one officer followed defendant and the other officer approached the group. Defense counsel argued that testimony of police witnesses is to be judged by the same standards as that of any other witness and, in light of the testimony that

-4-

multiple shots had been fired, Williams testimony was more believable that that of Officers Neville and Bristol because trained police officers would not ignore a group posing a potential danger. Finally, as we discussed earlier in this opinion, in light of the evidence supporting defendant's convictions, any error in the trial court's limitation of the questioning of Officer Bristol about the group was harmless.

IV

Finally, defendant argues the trial court abused its discretion when it precluded testimony about why the police did not test the guns for DNA or fingerprint evidence. Officer Bristol testified that based on his experience, fingerprint testing was not effective on firearms. Defense counsel pressed him:

> *Q*. In your experience of thirteen years, is it safe to say that a lot of guns are examined for fingerprints; is that correct?
>
> *A*. Yes.
>
> *Q*. And, a lot of guns are examined for DNA; is that correct?
>
> *A*. Correct; yes.
>
> *Q*. Are you saying that they never get fingerprints off of guns, why anybody would send them for fingerprints?
>
> *The Court*: That calls for—
>
> Otherwise—
>
> *Defense counsel*: I withdraw the question.

Defense counsel's express withdrawal of the question amounted to a waiver of appellate review. A waiver is "the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). A defendant may not waive his objection at the trial court and later raise the same issue as an error on appeal. See *People v Aldrich*, 246 Mich App 101, 111; 631 NW2d 67 (2001) (a defendant who withdrew his objection to adverse witness' testimony in the trial court waived his claim of error). Although defendant's waiver extinguished any claimed evidentiary error, *People v Vaughn*, 491 Mich 642, 663; 821 NW2d 288 (2012); *Carter*, 462 Mich at 215-216, if we were to address the claim, we would conclude that the trial court had broad discretion to impose reasonable limits on cross-examination to avoid harassment of witnesses, confusion of the issues, repetitive questioning or the admission of marginally relevant evidence, *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993), and any response to defense counsel's question regarding why "anybody" would perform DNA or fingerprint tests if "they never get fingerprints off guns" would be based on speculation. The utility of forensic evidence in other cases is, moreover, a collateral matter on which the trial court could reasonably limit questioning. *People v Canter*, 197 Mich App 550, 564; 496 NW2d 336 (1993).

Affirmed.

/s/ Stephen L. Borrello
/s/ Kurtis T. Wilder
/s/ Cynthia Diane Stephens