# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DEVONTE DEMEER PARKER,

       Defendant-Appellant.

UNPUBLISHED
February 23, 2017

No. 330244
Kalamazoo Circuit Court
LC No. 2015-000024-FC

Before: BORRELLO, P.J., and MARKEY and M. J. KELLY, JJ.

PER CURIAM.

Following a jury trial, defendant, Devonte Parker, was convicted of reckless driving causing death, MCL 257.626(4); failure to stop at the scene of an accident resulting in serious impairment of a body function or death, MCL 257.617(2); third-degree fleeing or eluding a police officer, MCL 257.602a(3)(a); and assaulting, resisting, or obstructing a police officer, MCL 750.81d(1).[1] Parker was concurrently sentenced to 7 years and 6 months to 15 years' imprisonment for reckless driving causing death, three to five years' imprisonment for failure to stop, three to five years for third-degree fleeing or eluding a police officer, and 16 months to 2 years' imprisonment for assaulting, resisting, or obstructing a police officer. He now appeals as of right. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

This appeal arises out of an altercation that started with Parker playing music too loudly in an apartment complex parking lot. Kenneth Miller, a resident at the apartment complex, went outside to confront Parker, who was inside a vehicle, about the music. Miller and Parker exchanged words, the police were called, and Miller blocked Parker's vehicle from leaving before the police arrived. Parker put the vehicle in drive and began to leave. Miller ended up on the hood of the vehicle, and Parker continued driving out onto the main road. Miller eventually became dislodged from the vehicle, sustained severe head injuries, and died.

---

[1] Parker was acquitted of second-degree murder, MCL 750.317.

-1-

## II.  SELF-DEFENSE

### A.  STANDARD OF REVIEW

Parker first argues that he was denied his due process rights because he established self-defense for the reckless driving offense.  He does not challenge the sufficiency of the evidence for any of the requirements for reckless driving causing death; rather, he asserts that the prosecution presented insufficient evidence to disprove his claim of self-defense.  Challenges to the sufficiency of the evidence are reviewed de novo.  *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010).  The analysis is "whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt."  *Id*. at 175.  In making this determination, we view "the evidence in the light most favorable to the prosecution."  *Id*.  "All conflicts with regard to the evidence must be resolved in favor of the prosecution."  *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005).  Further, we will "not interfere with the jury's assessment of the weight and credibility of witnesses or the evidence, and the elements of an offense may be established on the basis of circumstantial evidence and reasonable inferences from the evidence."  *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013) (citations omitted).

### B.  ANALYSIS

"Due process requires that, to sustain a conviction, the evidence must show guilt beyond a reasonable doubt."  *People v Railer*, 288 Mich App 213, 216; 792 NW2d 776 (2010).  "Once a defendant raises the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution must exclude the possibility of self-defense beyond a reasonable doubt."  *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014) (quotation marks and citation omitted).  In relevant part, the Self-Defense Act, MCL 780.971 *et seq*., provides as follows:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.  [MCL 780.972(1)(a).]

Here, Parker testified that he decided to leave because he feared for his life.  However, the prosecution presented evidence to the contrary.  There was testimony that Parker told his friend, Michelle Kirk, "You better get your ass out here, and get . . . your neighbor [i.e., Miller] before I beat his ass."  Further, Parker expressed that he was leaving once the police were coming and told Kirk, "You guys need to get out [of] here, the cops are on their way, and I'm getting' out of here."  A police detective testified that Parker told him that he did not want to have police contact that night because the vehicle was registered to a friend who he believed to

have warrants. This evidence suggests that Parker left out of fear of the police arriving rather than fear for his life.

Further, although Parker testified that he thought he heard Miller ask for a weapon, Parker testified that he never saw Miller with a weapon. An eyewitness, Ryan Puma, expressed a desire to stay out of the argument between Miller and Parker. Miller's wife testified that she told Miller to come inside since the police were on their way, but Miller stated that he was going to wait outside until the police arrived. This testimony suggests that there was not an imminent threat of death or great bodily harm to Parker and that the use of deadly force was unnecessary.

Moreover, even after initially driving away from the parking space, Parker could have stopped driving so that Miller could have safely gotten off the vehicle. The distance from the blood spots in the road to the entrance of the apartment complex was 1,220 feet, and to get to the main road the vehicle had to travel approximately 160.4 feet west and 34.4 feet south. Thus, Miller traveled approximately 1,415 feet. Puma and Miller's wife testified that Parker was driving at a high rate of speed with Miller on the hood of the vehicle, and even Kirk, who was on the phone with Parker, testified that the engine sounded like a racecar. When Parker spoke with the police, he never mentioned that he feared for his life. In addition, when Parker saw the police minutes after the incident, he fled. See *People v Goodin*, 257 Mich App 425, 432; 668 NW2d 392 (2003) (explaining that "evidence of flight is admissible to support an inference of 'consciousness of guilt' "). Therefore, viewing the evidence in a light most favorable to the prosecution, *Harverson*, 291 Mich App at 175, the evidence was sufficient to rebut Parker's claim of self-defense beyond a reasonable doubt, *Stevens*, 306 Mich App at 630.

Nevertheless, Parker argues that the jury found him not guilty of second-degree murder because he was acting in self-defense. He asserts that there was no rational reason for the jury to not apply self-defense to his reckless driving causing death charge. We disagree. Parker assumes that the jury found that his self-defense theory was established, but the record does not support his assumption. First, the jury verdicts were not necessarily inconsistent, given that the jury could have reasonably concluded that, although self-defense did not apply, the prosecution had not established all the elements of second-degree murder. Second, as recognized by Parker on appeal, "inconsistent verdicts within a single jury trial are permissible and do not require reversal" in the absence of confusion by the jury, a misunderstanding of the instructions, or impermissible compromises. *People v Putman*, 309 Mich App 240, 251; 870 NW2d 593 (2015). "[J]uries are not held to any rules of logic nor are they required to explain their decisions." *Id.* (quotation marks and citation omitted; alteration in *Putman*). Parker does not argue any of the circumstances explained in *Putman*. Rather, he acknowledges the permissibility of inconsistent verdicts and reverts back to his sufficiency argument, which, as explained above, is without merit.

## III. EXCLUSION OF EVIDENCE

Parker next argues that the trial court abused its discretion in excluding evidence of Miller's prior arrests and convictions for assault. Parker also makes a conclusory argument that the abuse of discretion denied him a fair trial and due process of law.

After review of the record, we conclude that Parker waived this issue. "[W]aiver is the *intentional* relinquishment or abandonment of a known right." *People v Vaughn*, 491 Mich 642, 663; 821 NW2d 288 (2012) (quotation marks and citation omitted; emphasis in *Vaughn*). "A defendant who waives a right extinguishes the underlying error and may not seek appellate review of a claimed violation of that right." *Id.* Specifically, "[a] defendant should not be allowed to assign error on appeal to something his own counsel deemed proper at trial." *People v Green*, 228 Mich App 684, 691; 580 NW2d 444 (1998). "To do so would allow a defendant to harbor error as an appellate parachute." *Id.*

The trial court, on numerous occasions, made clear that it was not foreclosing the possibility of allowing Parker's lawyer to question Miller's wife about the prior convictions. The trial court instead instructed Parker's lawyer to provide legal authority and notice if he wanted to try to use specific instances of conduct and prior convictions. Parker's lawyer responded that he understood the instruction. However, Parker's lawyer never provided any authority, and he never subsequently argued the issue. Although the reasons why Parker did not pursue this issue further are unclear from the record, it is plausible that he did not pursue it due to his own specific instances of violence. Regardless of the reason, Parker knew he had had the right to address the issue and subsequently raise it, but he never exercised it. Accordingly, we conclude that Parker waived this issue. *Vaughn*, 491 Mich at 663.

## IV. RIGHT TO AN IMPARTIAL JURY

### A. STANDARD OF REVIEW

Last, Parker argues that he was denied the right to an impartial jury (1) because the court allowed Juror Three to remain on the jury panel after Juror Eight reported that Juror Three was biased and (2) because the court failed to question the entire jury panel to see if any comments or Juror Three's bias influenced them. "The trial court's decision whether to remove a juror is reviewed for an abuse of discretion," and "[c]onstitutional issues, such as the right to a fair trial, are reviewed de novo." *People v Mahone*, 294 Mich App 208, 215; 816 NW2d 436 (2011). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id.* at 212.

### B. ANALYSIS

"The United States and Michigan Constitutions guarantee a criminal defendant a fair trial by an impartial jury." *People v Jackson*, 292 Mich App 583, 592; 808 NW2d 541 (2011), citing US Const Am VI; Const 1963, art 1, § 20. "Consistent with a defendant's right to a fair and impartial jury, jurors may only consider the evidence that is presented to them in open court." *People v Stokes*, 312 Mich App 181, 187; 877 NW2d 752 (2015) (quotation marks and citation omitted). "[J]urors are presumed to be . . . impartial, until the contrary is shown," and "[t]he burden is on the defendant to establish that the juror was not impartial or at least that the juror's impartiality is in reasonable doubt." *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008) (quotation marks and citation omitted; second alteration in *Miller*). The *Stokes* Court explained:

> Where the jury considers extraneous facts not introduced in evidence, this deprives a defendant of his rights of confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment. To establish that the jury was influenced in a manner requiring reversal, a defendant must prove (1) that the jury was exposed to an extraneous influence, and (2) that this extraneous influence created a real and substantial possibility that [it] could have affected the jury's verdict. [*Stokes*, 312 Mich App at 187 (quotation marks and citations omitted).]

If a "defendant establishes this initial burden, the burden shifts to the people to demonstrate that the error was harmless beyond a reasonable doubt." *People v Fletcher*, 260 Mich App 531, 540; 679 NW2d 127 (2004) (quotation marks and citation omitted). The prosecution can establish that the error was harmless beyond a reasonable doubt "by proving that either the extraneous influence was duplicative of evidence produced at trial or the evidence of guilt was overwhelming." *Id*. (quotation marks and citation omitted).

Here, the alleged extraneous influence was one of the jurors viewing Parker's father in an expensive, large vehicle. Juror Three observed Parker's father outside the courtroom and apparently made a comment about her observation to the other jurors. Thus, Parker established the first requirement that the jury was exposed to extraneous influence. Juror Eight believed that Juror Three let this observation influence her views. However, when interviewed by the trial court, Juror Three expressly stated that she could be fair and impartial, was not biased one way or another, and was not influenced in her "process" by the observation. Although Juror Eight reported otherwise, Juror Three indicated that she merely made her statement in order to get everyone back on track. The trial court found that the two jurors merely had different perspectives and that it would not weigh Juror Eight's credibility over Juror Three's credibility. See generally *People v Galloway*, 259 Mich App 634, 638; 675 NW2d 883 (2003) ("This Court must give deference to the trial court's factual findings, particularly where the credibility of witnesses is involved."). Moreover, the trial court emphasized that Juror Three, who was under oath, indicated that she could be fair and impartial. Juror Eight and Juror Three both indicated that they understood that they could only use the evidence presented in reaching a verdict. The trial court reminded the jury that only evidence from the trial could be used in reaching a verdict, that things heard or observed outside the courtroom were not evidence, and that sympathy or prejudice must not influence the decision. See *Mahone*, 294 Mich App at 212 ("Jurors are presumed to follow their instructions. . . ."). Therefore, on this record, Parker has not met his burden of establishing that there was "a real and substantial possibility that [the extraneous influence] could have affected the jury's verdict." *Stokes*, 312 Mich App at 187 (quotation marks and citation omitted).

Finally, Juror Eight only reported that she thought Juror Three was influenced, and she reported that multiple jurors indicated that they could only consider the evidence. As explained above, Juror Three and Juror Eight both reported an understanding of the rules, and the trial court provided further instruction for the entire jury. Thus, only questioning Juror Three and Juror Eight and instructing the jury as a whole—rather than questioning each individual juror—was within the range of reasonable and principled outcomes. *Mahone*, 294 Mich App at 212. In sum, the trial court did not abuse its discretion in retaining Juror Three and only questioning Juror Three and Eight, and Parker was not denied a fair trial.

Affirmed.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Michael J. Kelly