# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 25, 2018

Plaintiff-Appellee,

v

No. 335070
Wayne Circuit Court
LC No. 16-003007-01-FC

DASHAWN JESSIE WALLACE,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM.

Defendant was originally charged with four counts each of assault with intent to commit murder, MCL 750.83, assault with intent to do great bodily harm less than murder, MCL 750.84, and felonious assault, MCL 750.82, and one count each of carrying a dangerous weapon with unlawful intent, MCL 750.226, intentionally discharging a firearm at a dwelling causing physical injury, MCL 750.234b(3), carrying a concealed weapon, MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Following trial, the jury convicted defendant of intentionally discharging a firearm at a dwelling causing personal injury and felony-firearm but acquitted him of all other charges.[1] The trial court sentenced defendant to 3 to 15 years in prison for the intentional discharge of a firearm conviction and two years for the felony-firearm conviction, to be served consecutively. We affirm defendant's convictions but remand for resentencing of the intentional discharge of a firearm conviction.

This case arises from an altercation on February 28, 2016, with several members of the Matten family. Defendant shot both Carmen Matten and her son, James Matten. Other members of Carmen's family were also present, but they were not injured. The circumstances surrounding the altercation were disputed. The defense theory at trial was that defendant acted in self-defense after James and his siblings came after and threatened him with a metal pole and an ax.

---

[1] The charge of carrying a concealed weapon was dismissed by the trial court.

-1-

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence at trial was insufficient to disprove his claim of self-defense and thereby allow the jury to convict him of discharging a firearm at a dwelling, causing personal injury. We disagree. When an appellate court's review of the sufficiency of the evidence, it must "view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). The jury, not the appellate court, determines the weight and credibility to assign to the evidence. *Id*. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). Any conflicts in the evidence must be resolved in favor of the prosecution. *Wolfe*, 440 Mich at 515.

The jury convicted defendant of violating MCL 750.234b, which provides, in relevant part:

> (1) Except as otherwise provided in this section, an individual who intentionally discharges a firearm at a facility that he or she knows or has reason to believe is a dwelling or a potentially occupied structure, whether or not the dwelling or structure is actually occupied at the time the firearm is discharged, is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $10,000.00, or both.

> (2) An individual who intentionally discharges a firearm in a facility that he or she knows or has reason to believe is a dwelling or a potentially occupied structure, in reckless disregard for the safety of any individual and whether or not the dwelling or structure is actually occupied at the time the firearm is discharged, is guilty of a felony punishable by imprisonment for not more than 10 years or a find of not more than $10,000.00, or both.

> (3) If an individual violates subsection (1) or (2) and causes any physical injury to another individual, the individual is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not more than $15,000.00, or both.

As used in the statute, discharging a firearm "at" a dwelling includes the discharge of a firearm "in, on, or near" a dwelling. *People v Wilson*, 230 Mich App 590, 592; 585 NW2d 24 (1998).

At trial, defendant raised a claim of self-defense. In *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014), this Court stated:

> Once a defendant raises the issue of self-defense and "satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist," the prosecution must "exclude the possibility" of self-defense beyond a reasonable

doubt. *People v Dupree*, 486 Mich 693, 709-710; 788 NW2d 399 (2010) (quotation marks and citations omitted). Under MCL 780.972(1):

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if . . .

> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

In this case, defendant relied on the testimony of Kenan Marten to support his claim of self-defense. According to Kenan, James Matten and his siblings, Jared Matten and Kenneth Matten, all approached defendant outside his house while screaming at him and getting "in his face." Kenan said that Jared had a dark pole, and Kenneth had an ax. Kenan testified that defendant retreated, and then disappeared behind an abandoned house, and that James, Jared, and Kenneth appeared to chase after him. About 30 seconds later, Kenan saw defendant emerge from beside the abandoned house. He then saw James, Kenneth, and Jared advancing toward defendant as defendant was backing up. Kenan agreed that Carmen Matten was on the front porch of her own house while this was happening. Kenan said that defendant again disappeared beside a house, and then he heard gunshots. After the shooting, Carmen ran inside her house, and Jared and Kenneth ran off.

Even if the jury believed Kenan's testimony and found that defendant reasonably felt threatened by James, Kenneth, and Jared, we note the jury did not convict defendant of any offenses involving those persons. The intentional discharge of a firearm conviction was based on defendant's discharge of a firearm at Carmen's dwelling, causing personal injury to Carmen. Carmen testified that she was placing some bags on her front porch, in preparation for her move to another house, when she saw defendant on the ground at the side of her house. According to Carmen, she merely asked defendant what he was doing and, without responding to her question, he pointed a rifle toward her and shot her in the leg. This testimony was sufficient to enable the jury to find beyond a reasonable doubt that defendant discharged a firearm at Carmen's dwelling, causing her personal injury. The only evidence supporting defendant's claim of self-defense was Kenan's testimony, but that testimony did not provide any basis for the jury to find that defendant had a reason to feel threatened by Carmen. According to Kenan, he was able to see Carmen on her front porch, whereas James, Kenneth, and Jared were all beside the houses, advancing toward defendant, and then defendant disappeared from Kenan's view, after which Kenan heard gunshots. There was no evidence that Carmen presented any threat to defendant when she was shot.

Based on Carmen's testimony that defendant intentionally pointed and discharged a firearm at her while she was on the porch of her house, that she was shot in the leg, and Kenan's testimony that the only apparent threat to defendant came from James, Kenneth, and Jared, who were not with Carmen or on the porch of her house, the jury could reasonably find beyond a reasonable doubt that defendant was not entitled to use deadly force when he discharged a

firearm at Carmen's dwelling, resulting in Carmen's gunshot injury. Given Kenan's testimony, it was not inconsistent for the jury to find that defendant's self-defense theory applied to some of the charges, but not the charge of intentional discharge of a firearm at Carmen's dwelling. Moreover, the fact that the jury acquitted defendant of the charged assault offenses against Carmen does not affect the sufficiency of the evidence in support of defendant's intentional discharge of a firearm conviction. The jury was entitled to find that defendant did not intend to assault Carmen but still intentionally discharged a firearm at her dwelling, which caused her gunshot wound.

Accordingly, sufficient evidence supports defendant's conviction of intentional discharge of a firearm at a dwelling causing personal injury and to therefore rebut defendant's claim of self-defense.

## II. PROSECUTORIAL MISCONDUCT

Next, defendant argues that the prosecutor engaged in misconduct by questioning both Carmen and James about their injuries and by commenting on Carmen's injuries in closing argument. Defendant argues that the prosecutor's questions and comments were irrelevant and unduly prejudicial because they evoked sympathy for the victims. Defendant concedes that there was no objection to the prosecutor's questions or closing remarks, leaving these claims unpreserved. An unpreserved issue of prosecutorial misconduct is reviewed for plain error affecting substantial rights. *People v Abraham*, 256 Mich App 265, 274; 662 NW2d 836 (2003). An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *People v Pipes*, 475 Mich 267, 279; 715 NW2d 290 (2006). This Court will not reverse if the prejudicial effect of any improper comment could have been cured by a timely instruction from the trial court. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

Claims of prosecutorial misconduct are decided case by case and by reviewing challenged comments in context to determine if defendant received a fair trial. *Id*. A prosecutor is afforded great latitude during closing argument and may argue the evidence and reasonable inferences arising from the evidence in support of her theory of the case. *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). But a prosecutor may not appeal to the jury to sympathize with the victim. *Id*. at 237. Prosecutorial misconduct may not be predicated on good-faith efforts to admit evidence. *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007).

The testimony regarding the injuries suffered by Carmen and James was not plainly improper because defendant was charged with multiple forms of assault. Both assault with intent to commit murder and assault with intent to do great bodily harm require proof of the defendant's intent. See *Stevens*, 306 Mich App at 628; *People v Jackson,* 292 Mich App 583, 588; 808 NW2d 541 (2011). Although evidence of an actual injury is not necessary to prove those offenses, a victim's injuries may be probative of the defendant's intent. *Stevens*, 306 Mich App at 629. Consistent with these principles, the trial court instructed the jury that actual injury is not necessary to prove assault with intent to do great bodily harm, but the jury could consider any injuries when deciding defendant's intent. The court also generally instructed the jury that "an assault does not have to cause an actual injury," but "if there was an actual injury, you may

consider that injury with the other evidence in determining whether there was an assault in this case." Defendant was also charged with intentional discharge of a firearm at a dwelling causing injury, which required the prosecutor to prove that defendant's discharge of a firearm caused an actual injury to the victim. Accordingly, it was not plain error to question Carmen and James about their injuries and to comment on their testimony in closing argument. To the extent that defendant complains that the prosecutor's questions and comments had the improper effect of eliciting sympathy for the victims, we remind him that an appropriate instruction on timely objection could have cured any perceived prejudice. Indeed, even without an objection, the trial court instructed the jury that it "must not let sympathy or prejudice influence your decision." This instruction was sufficient to protect defendant's substantial rights. See *Abraham*, 256 Mich App at 279 ("Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors.").

Even if some of the testimony was not relevant to the elements of the offenses, the testimony was not so prejudicial that a cautionary instruction could not have cured any possible prejudice. Moreover, questions about Carmen's use of a cane would not have been unduly prejudicial considering that the jury was able to observe her use of the cane when she testified. Additional testimony from Carmen about how the shooting impacted her and her family was not so prejudicial that a timely objection could not have cured any prejudice. Indeed, to the extent that the prosecutor's questions and comments could be deemed improper, it is clear that they did not affect the outcome of defendant's trial considering that the jury acquitted defendant of all of the assault charges, including all charges of assault relating to James and Carmen, the subjects of the challenged questions and comments.

For these reasons, defendant is not entitled to appellate relief on the basis of these unpreserved claims of prosecutorial misconduct.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that defense counsel was ineffective for failing to object to the prosecutor's conduct discussed in Section II. Defendant raised this issue in a motion for a new trial and requested an evidentiary hearing on his claim. The trial court denied defendant's motion for a new trial and determined that an evidentiary hearing was not necessary.

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc,* 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's factual findings are reviewed for clear error. *Id.* Whether the facts as found by the trial court establish a violation of the defendant's right to the effective assistance of counsel is a question of constitutional law, which is reviewed de novo. *Id.* To establish ineffective assistance of counsel, defendant must show that his counsel's performance fell below an objective standard of reasonableness, and that counsel's representation so prejudiced the defendant that he was denied a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). To demonstrate prejudice, defendant must show that there is a reasonable probability that but for counsel's error the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996).

As discussed in Section II, the testimony of Carmen and James regarding their injuries was relevant and admissible because it was probative of defendant's intent with regard to the assault charges. Further, the existence of a personal injury was an element of the charged offense of intentionally discharging a firearm at a dwelling, causing personal injury; therefore, defense counsel was not ineffective for failing to object to this testimony. Any objection would have been futile. See *Unger*, 278 Mich App at 256.

As for Carmen's additional testimony about how her injury had impacted her and her family, we agree the testimony may have been objectionable, but defendant has not established a reasonable probability that counsel's failure to object affected the jury's verdict. Defendant complains that the testimony was likely to garner sympathy for the victims, but the trial court specifically instructed the jury that it "must not let sympathy or prejudice influence your decision," and the jury's acquittal of defendant on most of the charges, including all assault charges related to Carmen, indicates that Carmen's brief comments about the consequences of being shot did not unduly influence the jury. For this reason, defendant has not shown that he was prejudiced by counsel's failure to object. *Johnson*, 451 Mich at 124.

Likewise, it would have been futile for defense counsel to object to the prosecutor's comments about Carmen's injuries during closing argument. The prosecutor's remarks were made for the proper purpose of arguing that Carmen's testimony about her injury supported the personal injury element of the charge of intentionally discharging a firearm at a dwelling, causing personal injury.

Although defendant also requested that the trial court conduct an evidentiary hearing on his claim of ineffective assistance of counsel, defendant's claim involved questions and comments that were matters of record, and he never made an offer of proof to show that further development of the record was necessary. Accordingly, the trial court did not err by deciding this issue without an evidentiary hearing, and defendant has not shown that remand for further proceedings is necessary. See *People v McMillan*, 213 Mich App 134, 141-142; 539 NW2d 553 (1995); *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985).

## IV. GREAT WEIGHT OF THE EVIDENCE

In cases tried before a jury, a defendant must move for a new trial in the trial court to preserve a claim that the jury's verdict is against the great weight of the evidence. *People v Cameron,* 291 Mich App 599, 617; 806 NW2d 371 (2011). Although defendant moved for a new trial in the trial court, he argued only that there was no evidence that he aimed his firearm at the house, or evidence that a bullet struck the house. On appeal, defendant argues that the jury's verdict is against the great weight of the evidence because the prosecutor did not disprove that he acted in self-defense. Because defendant's motion was not based on the same ground that defendant now asserts on appeal, this issue is unpreserved. See *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011). This Court reviews an unpreserved claim that a jury's verdict is against the great weight of the evidence for plain error affecting substantial rights. *Id.*

In *People v Lacalamita*, 286 Mich App 467; 780 NW2d 311 (2009), this Court summarized the test for whether a jury's verdict is against the great weight of the evidence:

The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence. Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial. Further, the resolution of credibility questions is within the exclusive province of the jury. [*Id*. at 469-470 (citations and quotation marks omitted).]

Furthermore, absent extraordinary circumstances, issues of witness credibility are for the jury to resolve, and a reviewing court may not substitute its own view of the credibility of witnesses for that of the jury. *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998)

As discussed earlier, the prosecution presented sufficient evidence to prove that defendant committed the offense of discharging a firearm at a dwelling, causing injury. This charge was supported principally by Carmen's testimony that she was standing on the porch of her house when she saw defendant on the ground next to the porch and asked him what he was doing. After her inquiry, he pointed a rifle in her direction and fired it, hitting her in the leg. Although defendant raised a claim of self-defense, the evidence in support of that claim was based on the actions of Carmen's sons, who were in a different area away from Carmen. There was no evidence that Carmen presented any threat to defendant's safety. The jury could have rationally found that defendant acted in self-defense to ward off a perceived threat from Carmen's sons, but that he was not justified in discharging a firearm at Carmen's dwelling. In addition, the jury could have logically acquitted defendant of the assault charges against Carmen by finding that he did not intend to assault her, but that he did intentionally discharge a firearm at her dwelling, which resulted in her being struck by a bullet, causing injury.

There is no reasonable support for defendant's position that the jury's verdict was based solely on sympathy for Carmen. The fact that the jury acquitted defendant of the assault charges against Carmen undermines this claim. As defendant argues, the jury may have believed that Carmen was an innocent bystander but that did not preclude the jury from reasonably finding that it was defendant's intentional discharge of a firearm at her house that caused her injury.

For these reasons, defendant's argument that the jury's verdict is against the great weight of the evidence is meritless.

## V. SENTENCING

Defendant challenges his prison sentence of 3 to 15 years for intentionally discharging a firearm at a dwelling, causing personal injury. Because we agree with defendant that the trial court erred in scoring offense variable (OV) 13 of the sentencing guidelines, and the scoring of that variable affects the appropriate guidelines range, we remand for resentencing.

A trial court's scoring decision must be supported by a preponderance of the evidence. *People v Hardy,* 494 Mich 430, 438; 835 NW2d 340 (2013). This Court reviews the trial court's factual determinations for clear error. *Id.* "Whether the facts, as found, are adequate to satisfy

the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

In scoring the guidelines, the trial court assessed 25 points for OV 13, which provides, in relevant part:

> (1) Offense variable 13 is continuing pattern of criminal behavior. Score offense variable 13 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> * * *
>
> (c) The offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person . . . . . . . . . . . . . . . . . . . . . . 25 points
>
> * * *
>
> (2) All of the following apply to scoring offense variable 13:
>
> (a) For determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction. [MCL 777.43.]

The trial court counted the charges for which defendant was acquitted to support its assessment of 25 points for OV 13. In denying defendant's motion for resentencing, the court stated that the "record here does establish that there was — and the Court was actually mandated to score that 25 points, offense variable 13 must have been scored at 25 points establishing a pattern of criminal behavior using all the charged offenses here."

Defendant first argues that because the sentencing offense, discharge of a firearm at a dwelling causing injury, MCL 750.234b(3), is classified as an offense against public safety, MCL 777.16m, and because 25 points are to be scored under OV 13 only when the sentencing "offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person," MCL 777.43(1)(c), the trial court erred as a matter of law in assessing 25 points for OV 13. We disagree.

MCL 777.22(5) provides that "[f]or all crimes against public safety, score offense variables 1, 3, 4, 9, 10, 12, 13, 14, 16, 19, and 20." Because the instructions direct the trial court to score OV 13 when scoring the guidelines for a crime against public safety, we reject defendant's argument that the trial court was not permitted to score OV 13, or was restricted to considering only public safety offenses to find a pattern of criminal activity. Although MCL 777.43(1)(c) requires the trial court to determine if a pattern of felonious criminal activity involving 3 or more crimes against a person existed, the sentencing offense need not also be a crime against a person.

Defendant further argues that the trial court erred by scoring OV 13 on the basis of the charged conduct for which he was acquitted. The trial court's comments indicate that it believed that it was required to score OV 13 merely because defendant had been charged with additional

-8-

crimes against a person, notwithstanding that the jury acquitted him of those charges. Although MCL 777.43(2)(a) allows a court to consider criminal conduct that did not result in a conviction, MCL 777.43(1)(c) still requires evidence of the defendant's "criminal behavior" or "criminal activity" in order for points to be assessed. *People v Harverson*, 291 Mich App 171, 180; 804 NW2d 757 (2010). Further, the court's scoring decision must be supported by a preponderance of the evidence. *Hardy*, 494 Mich at 438.

The jury convicted defendant only of intentionally discharging a firearm at a dwelling, and felony-firearm. It acquitted him of the remaining charges associated with Carmen and other members of her family. We acknowledge that a sentencing court need not score the sentencing guidelines consistent with a jury's verdict. See *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012), citing *People v Ratkov (After Remand)*, 201 Mich App 123, 125; 505 NW2d 886 (1993). But because the jury acquitted defendant of the remaining charges, the trial court could not rely on those additional charges to score OV 13 unless it found by a preponderance of the evidence that defendant actually engaged in the charged criminal activity. *Id.*; *Hardy*, 494 Mich at 438. Although defendant did not dispute engaging in the underlying conduct that was offered in support of the additional charges, a mere finding that defendant engaged in that conduct was not sufficient to support the scoring of OV 13. As explained, to be scored under OV 13, a defendant's conduct must involve "criminal activity." MCL 777.43(1)(c); *Harverson*, 291 Mich App at 180. At trial, defendant claimed that his conduct did not constitute criminal activity because it was justified, lawful self-defense. The trial court stated that it was "mandated to score that 25 points . . . using all the charged offenses here." The trial court's comments reflect an erroneous belief that the charges themselves were sufficient to score OV 13. The court never made findings of fact by a preponderance of the evidence that defendant committed the other charged offenses under circumstances that were not justified by self-defense. Accordingly, as the record currently exists, the trial court erred in assessing 25 points for OV 13. See *People v Golba*, 273 Mich App 603, 614; 729 NW2d 916 (2007).

The trial court's scoring of OV 13 affects defendant's guidelines range. If OV 13 is not scored, defendant's total OV score will be reduced from 70 to 45 points, placing him in OV Level IV instead of OV Level V. This change will lower defendant's guidelines range from 29 to 57 months to 19 to 38 months. MCL 777.64. A scoring error that affects the guidelines range requires resentencing. *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006). Accordingly, we vacate defendant's sentence for intentional discharge of a firearm at a dwelling and remand for resentencing on that offense.[2]

---

[2] Because we are remanding for resentencing, we do not reach defendant's additional challenge to the reasonableness and proportionality of his sentence. We note, however, that if we were not remanding for resentencing on the basis of a scoring error, defendant would not be entitled to relief with respect to his additional proportionality argument. Because defendant was sentenced within the sentencing guidelines range, his sentence is presumed proportionate. *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011). Further, MCL 769.34(10) requires this Court to affirm a sentence that is within the guidelines range absent a scoring error or reliance on inaccurate information. *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016).

We affirm defendant's convictions but remand for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Karen M. Fort Hood

---

Thus, if we did not conclude that the trial court erred in scoring OV 13, we would be required to affirm defendant's sentence, which was within the guidelines range.