PEOPLE v HARVERSON

Docket No. 293014. Submitted December 7, 2010, at Grand Rapids. Decided December 28, 2010, at 9:00 a.m.

Terell D. Harverson was convicted of unarmed robbery by a jury in the Kent Circuit Court. He was sentenced by the court, Paul J. Sullivan, J., to 3 to 15 years in prison. Defendant appealed, alleging that the evidence was insufficient to support his conviction and that, in determining the appropriate sentence, the court erred in scoring four offense variables (OVs).

The Court of Appeals *held*:

1. The de novo standard of review is the proper standard to employ in reviewing defendants' challenges that the evidence was insufficient to support their convictions. Reviewing an issue de novo means that the reviewing court addresses a legal issue anew, without any deference to the trial court's conclusion on the issue.

2. A defendant, to be guilty of unarmed robbery, must have feloniously taken the property of another, by force, violence, assault, or putting in fear, and while being unarmed. Unarmed robbery is a specific intent crime that requires the prosecution to establish that the defendant intended to permanently deprive the owner of the property. To permanently deprive, in the context of unarmed robbery, does not require, in a literal sense, that a defendant have an intent to permanently deprive the owner of the property; rather, it includes the retention of property without such retention being for the purpose of returning it within a reasonable time or the retention of property with the intent to return it only if the owner pays some compensation for its return. It is clear from defendant's rendition of the events that he possessed the requisite intent. Sufficient evidence existed to satisfy all the elements of the offense. The prosecution met its burden of proving the elements of unarmed robbery beyond a reasonable doubt.

3. OV 13, MCL 777.43, is scored for a continuing pattern of criminal behavior. Under OV 13, 10 points are appropriate if the offense was part of a pattern of felonious criminal activity involving a combination of three or more crimes against a person or property. Criminal activity, not a criminal conviction, is required for such purposes. A juvenile adjudication clearly constitutes

"criminal activity." Defendant's juvenile adjudications, which included receiving and concealing a stolen vehicle, unlawfully driving away an automobile, breaking and entering, fourth-degree criminal sexual conduct, and failure to register as a sex offender, supported the trial court's scoring of 10 points for OV 13.

4. Ten points are properly scored for OV 9, MCL 777.39, if 2 to 9 victims were placed in danger of physical injury or death. The trial court properly scored 10 points for OV 9 because defendant pointed a gun at the victim and two other individuals present at the scene of the robbery.

5. Fifteen points are properly scored for OV 1, MCL 777.31, when a firearm was pointed at or toward a victim. Five points are properly scored for OV 2, MCL 777.32, when the offender possessed a pistol, rifle, or shotgun. The trial court did not err by scoring 15 points for OV 1 and 5 points for OV 2 because the evidence showed that defendant pointed a gun at the victim during the robbery.

Affirmed.

1. CONSTITUTIONAL LAW — CRIMINAL LAW — SUFFICIENCY OF THE EVIDENCE — REVIEW DE NOVO.

The de novo standard of review is properly employed in reviewing a defendant's challenge to the sufficiency of the evidence to support the defendant's conviction; reviewing an issue de novo requires the reviewing court to address a legal issue anew, without deference to the trial court's conclusion on the issue.

2. ROBBERY — UNARMED ROBBERY — WORDS AND PHRASES — TO PERMANENTLY DEPRIVE THE OWNER OF PROPERTY.

Unarmed robbery is a specific intent crime for which the prosecution must establish that the defendant intended to permanently deprive the owner of property; to permanently deprive in the context of unarmed robbery does not require, in a literal sense, that the defendant have an intent to permanently deprive the owner of property, rather, the intent to permanently deprive includes the retention of property without such retention being for the purpose of returning the property within a reasonable time or the retention of property with the intent to return the property only if the owner pays some compensation for its return (MCL 750.530).

3. SENTENCES — OFFENSE VARIABLES — OFFENSE VARIABLE 13 — CRIMINAL ACTIVITY — JUVENILE ADJUDICATIONS.

Ten points must be scored under offense variable 13, regarding a continuing pattern of criminal behavior, if the defendant's offense

was part of a pattern of felonious criminal activity involving a combination of 3 or more crimes against a person or property; an appropriate juvenile adjudication constitutes criminal activity, a criminal conviction is not required (MCL 777.43[1][d]).

4. SENTENCES — OFFENSE VARIABLES — OFFENSE VARIABLE 9.

Scoring offense variable 9 for multiple victims may be appropriate, although the defendant may have robbed only one victim, when there were other individuals present at the scene of the robbery who were placed in danger of injury or loss of life during the robbery (MCL 777.39).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *William A. Forsyth*, Prosecuting Attorney, and *Timothy K. McMorrow*, Chief Appellate Attorney, for the people.

*Joseph L. Stewart* for defendant.

Before: MURRAY, P.J., and HOEKSTRA and SERVITTO, JJ.

MURRAY, P.J. Defendant appeals as of right his jury trial conviction of unarmed robbery, MCL 750.530. For this conviction, defendant was sentenced to 3 to 15 years' imprisonment. We affirm.

### I. BACKGROUND

The events in this case were set in motion on March 14, 2008, when Kenneth Conliffe accepted a United Parcel Service (UPS) shipment of a cell phone for Kiara Anderson, his sister's roommate and defendant's girlfriend, at the women's apartment. Under the impression that Anderson was involved in stealing the phone of his sister's boyfriend, Conliffe explained that after accepting the phone, he threw it in a stream as a means of retaliation. Shortly thereafter, Conliffe received a ride home from his mother and stepfather.

Upon Conliffe's arrival home, he was accosted in his driveway by defendant, Anderson, and Jovanta Jackson. According to Conliffe's mother and stepfather, defendant accused Conliffe of stealing a cell phone and then removed Conliffe's sunglasses at gunpoint before fleeing the scene with his compatriots. Both Conliffe and his mother added that before the assailants left, Jackson told Conliffe to "run his pockets."

Offering a variation on this version of events, Anderson claimed that after learning from UPS that Conliffe had accepted the cell-phone shipment, she, defendant, and Jackson went to Conliffe's house to scare Conliffe into returning her cell phone. Anderson elaborated that although Jackson pulled a gun during the altercation and later "passed it" to defendant, she did not recall either man pointing a gun at Conliffe. Similar to Anderson's assertions, defendant testified that he accompanied Anderson and Jackson in order to retrieve Anderson's phone and that it was Jackson who pulled the gun during the altercation. Notably, defendant admitted "snatching [Conliffe's] glasses," but claimed that he told Conliffe, "you get these back when we get the phone back." Defendant denied, however, that he had possession of the gun and instead explained that he refused Jackson's demand to "run [Conliffe's] pockets" when Jackson threatened Conliffe with the gun after defendant had taken the glasses.

Following their altercation with Conliffe, the assailants drove off, but were pulled over and arrested when police identified their car and license plate number from a dispatch call regarding an armed robbery. During the course of the arrest, police found Conliffe's glasses and ammunition inside the car. The gun was found the next day in the neighborhood where the assailants were pulled over. Defendant was subse-

quently tried on a charge of armed robbery, but convicted of the lesser offense previously stated. This appeal ensued.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

#### 1. STANDARD OF REVIEW

Defendant first's assignment of error is that the evidence was insufficient to support his unarmed robbery conviction. Due process requires that, to sustain a conviction, the evidence must show guilt beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999). In determining the sufficiency of the evidence, this Court reviews the evidence in the light most favorable to the prosecution. *People v Tombs*, 472 Mich 446, 459; 697 NW2d 494 (2005) (opinion by KELLY, J.). We do not consider whether any evidence existed that could support a conviction, but rather, we must determine whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992), citing *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979). "[C]ircumstantial evidence and reasonable inferences arising from th[e] evidence can constitute satisfactory proof of the elements of a crime." *People v Lee*, 243 Mich App 163, 167-168; 622 NW2d 71 (2000) (citation omitted).

The prosecution does not challenge the foregoing, but nonetheless points out that this Court has cited our Supreme Court for the proposition that sufficiency of the evidence issues are subject to de novo review despite the fact that no Michigan Supreme Court case expressly cites that standard. See *People v Hawkins*, 245 Mich

App 439, 457; 628 NW2d 105 (2001). In making this argument, the prosecution seems to imply that traditional de novo review would require this Court to overturn a verdict simply because its view of the facts conflicts with the jury's determination. This, however, misapprehends our duty in these cases.

When our Court reviews an issue "de novo," it means that we are addressing a legal issue anew, without any deference to the trial court's conclusion. See, e.g., *Mich Ed Ass'n v Secretary of State*, 280 Mich App 477, 511; 761 NW2d 234 (2008) (WHITBECK, J., dissenting); *Heindlmeyer v Ottawa Co Concealed Weapons Licensing Bd*, 268 Mich App 202, 218-219; 707 NW2d 353 (2005). Hence, when reviewing an argument that there was legally insufficient evidence to support a conviction, we do not defer to any decision made by the trial court, but instead employ our independent judicial views while employing the well-settled standards for deciding sufficiency issues. *People v Sherman-Huffman*, 241 Mich App 264, 265; 615 NW2d 776 (2000), aff'd 466 Mich 39 (2002) (employing de novo review of sufficiency argument from a bench trial conviction). More than two decades ago the United States Court of Appeals for the District of Columbia Circuit accurately and succinctly stated this proposition:

> We have concluded that we do not defer to the district court, because we must make our own independent judgment regarding the sufficiency of evidence. In so doing, of course, we may consider and be influenced by the opinion of the expert trial judge who has lived with the case—just as we give weight to one another's views. This will be particularly so where the trial judge has set forth his reasons with specificity. Moreover, it is the burden of the Government, as it is always the appellant's burden, to show that the judgment appealed from was wrong. But ultimately, the decision whether or not the evidence was

sufficient is a question of law and therefore entirely our own. [*United States v Singleton*, 226 US App DC 445, 446; 702 F2d 1182 (1983) (en banc).]

See, also, *United State v Kelley*, 461 F3d 817, 825 (CA 6, 2006).[1]

In light of this explanation, it is easy to see that in articulating the de novo standard of review our prior cases cited Supreme Court decisions that were reviewing the evidence in a de novo fashion, even though not specifically saying so. See, e.g., *Tombs*, 472 Mich at 459-461 (opinion by KELLY, J.); *Johnson*, 460 Mich at 732-733; *Wolfe*, 440 Mich at 516-528. Consequently, we hold that although not expressly articulated by our Supreme Court, the de novo standard of review is proper in reviewing defendants' challenges that the evidence was insufficient to support their convictions.

### 2. UNARMED ROBBERY

To be guilty of unarmed robbery, a defendant must (1) feloniously take the property of another, (2) by force or violence or assault or putting in fear, and (3) be unarmed. *People v Johnson*, 206 Mich App 122, 125-126; 520 NW2d 672 (1994); MCL 750.530. Unarmed robbery is a specific intent crime for which the prosecution must establish that the defendant intended to permanently deprive the owner of property. *People v Dupie*, 395 Mich 483, 487; 236 NW2d 494 (1975); *People*

---

[1] Importantly, whether in federal or state court, it is a defendant's constitutional right to due process that is at stake in sufficiency cases. *Johnson*, 460 Mich at 723; *Clark v Kansas City Missouri Sch Dist*, 375 F3d 698, 701 (CA 8, 2004). And "state and federal courts have the same responsibilities to protect persons from violation of their constitutional rights . . . ." *Wright v West*, 505 US 277, 287; 112 S Ct 2482; 120 L Ed 2d 225 (1992) (quotation marks and citation omitted).

*v King*, 210 Mich App 425, 428; 534 NW2d 534 (1995).[2] Because intent may be difficult to prove, only minimal circumstantial evidence is necessary to show a defendant entertained the requisite intent. *People v Strong*, 143 Mich App 442, 452; 372 NW2d 335 (1985).

In raising this issue, defendant challenges only the intent element of this offense, in essence arguing that because he walked away after taking the glasses and refused to steal any other items from Conliffe, the prosecution failed to establish that defendant intended to permanently deprive Conliffe of his property.[3] However, to permanently deprive in the context of unarmed robbery "does not require, in a literal sense, that a thief have an intent to *permanently* deprive the owner of the property." *People v Jones*, 98 Mich App 421, 425-426; 296 NW2d 268 (1980). Rather, the intent to permanently deprive includes the retention of property without the purpose to return it within a reasonable time or the retention of property with the intent to return the property on the condition that the owner pay some compensation for its return. *Id.*

It is clear from defendant's own rendition of events that he possessed the requisite intent. On this score, defendant explained that he accompanied Anderson and Jackson for the express purpose of retrieving Anderson's cell phone. When Conliffe subsequently denied having knowledge of Anderson's phone, defen-

---

[2] Although *King* refers to armed robbery, the intent element of that offense is identical to that required for unarmed robbery. *King*, 120 Mich App at 428; *Johnson*, 206 Mich App at 125-126.

[3] Ironically, despite challenging the intent element of unarmed robbery on these grounds, defendant concedes that he is guilty of larceny from a person, MCL 750.357—an offense requiring the intent to permanently deprive. *People v Perkins*, 262 Mich App 267, 271-272; 686 NW2d 237 (2004), aff'd 473 Mich 626 (2005). Despite this inconsistency, we will address defendant's argument as presented.

dant "snatched" Conliffe's glasses and told him, "you get these back when we get the phone back." In other words, defendant intended to retain Conliffe's glasses and *only* return them on the condition that Conliffe pay compensation in the form of returning Anderson's phone. Such testimony easily satisfies the intent element of unarmed robbery.

Defendant argues that the testimony of Anderson and Conliffe's mother contained inconsistencies. However, it is for the jury to determine witness credibility and resolve inconsistencies of testimony. *People v Fletcher*, 260 Mich App 531, 561; 679 NW2d 127 (2004). And in any event, defendant's explanation of his words to Conliffe is tantamount to an admission that he possessed the requisite intent.

Before moving on, we note that although not directly challenged by defendant, sufficient evidence existed to satisfy the other elements of the offense. Indeed, Conliffe's mother and stepfather positively identified defendant as the perpetrator who pointed the gun at Conliffe before taking the glasses. An inference of the use of fear or violence (and even that defendant was armed) is easily deducible from such testimony. Thus, the prosecution met its burden of proving the elements of unarmed robbery beyond a reasonable doubt.

### B. SCORING OF OFFENSE VARIABLES

Next, defendant challenges the scoring of Offense Variables (OV) 13, 9, 1, and 2. This Court reviews de novo the application of the sentencing guidelines but reviews a trial court's scoring of a sentencing variable for an abuse of discretion. *People v Cannon*, 481 Mich 152, 156; 749 NW2d 257 (2008); *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002). "Scoring decisions for which there is any evidence in support will

be upheld." *People v Elliott*, 215 Mich App 259, 260; 544 NW2d 748 (1996). Absent an error in the scoring or reliance on inaccurate information in determining the sentence, this Court must affirm a sentence within the applicable guidelines range. MCL 769.34(10); *People v Kimble*, 470 Mich 305, 310-311; 684 NW2d 669 (2004). A trial court's sentence may be invalid if it is based on a misconception of the law or inaccurate information. MCL 769.34(10); *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997).

### 1. OV 13

Defendant first claims the court erroneously scored 10 points for OV 13 by including his juvenile adjudications.[4] This argument is unsustainable, however, in view of the plain language of MCL 777.43. Under that statute, OV 13 is scored for a "continuing pattern of criminal behavior" for which 10 points are appropriate if the "offense was part of a pattern of felonious *criminal activity* involving a combination of 3 or more crimes against a person or property . . . ." MCL 777.43(1)(d) (emphasis supplied). Notably, the plain language of the statute does not require a criminal conviction to score 10 points, but only requires "criminal activity." A juvenile adjudication clearly constitutes criminal activity because "it amounts to a violation of a criminal statute, even though that violation is not resolved in a 'criminal proceeding.' " *People v Luckett*, 485 Mich 1076, 1076-1077 (2010) (YOUNG, J., concurring). Therefore, defendant's poor juvenile track record, rife with adjudications, supported the trial court's scoring of this variable.

---

[4] According to the presentence investigation report, defendant's juvenile adjudications included: receiving and concealing a stolen vehicle, unlawfully driving away an automobile, breaking and entering, fourth-degree criminal sexual conduct, and failure to register as a sex offender.

## 2. OV 9

Next, defendant asserts that because Conliffe was the only victim, his score for this OV should be zero points instead of 10 points. MCL 777.39 governs the scoring of OV 9 and provides in part that the trial court assess 10 points if "2 to 9 victims . . . were placed in danger of physical injury or death . . . ." MCL 777.39(1)(c). For purposes of scoring this variable, a court is to count each person who was placed in danger of physical injury or loss of life or property during the transaction giving rise to the particular offense as a victim. MCL 777.39(2)(a); *People v McGraw*, 484 Mich 120, 128; 771 NW2d 655 (2009).

The presentence investigation report reveals[5] that during the robbery, Conliffe's mother jumped between Conliffe and defendant while defendant was pointing the gun at Conliffe's face for fear that Conliffe or her grandson, who was nearby, could be shot. "[I]n a robbery, the defendant may have robbed only one victim, but scoring OV 9 for multiple victims may nevertheless be appropriate if there were other individuals present at the scene of the robbery who were placed in danger of injury or loss of life." *People v Sargent*, 481 Mich 346, 350 n 2; 750 NW2d 161 (2008). Pointing a gun at multiple individuals clearly places them in danger of injury or loss of life. The score of 10 points for OV 9 was appropriate.

## 3. OV 1 AND OV 2

Defendant challenges the scoring of OVs 1 and 2 on the grounds that he was not convicted of possessing or

---

[5] "A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report . . . ." *People v Ratkov (After Remand)*, 201 Mich App 123, 125; 505 NW2d 886 (1993).

pointing a firearm toward the victim and because there was no evidence that any other offender was assigned points for the use of weapons in this case. A trial court scores 15 points for OV 1 when "[a] firearm was pointed at or toward a victim," MCL 777.31(1)(c), and five points for OV 2 when "[t]he offender possessed . . . a pistol, rifle, [or] shotgun," MCL 777.32(1)(d). As noted in the foregoing analysis, the presentence investigation report indicates that defendant pointed the gun at Conliffe's face and, additionally, Conliffe's mother and stepfather both testified at trial that defendant brandished a gun during the robbery. The trial court did not err in scoring these variables.

### C. *BLAKELY* CHALLENGE

Before concluding, we note that defendant also raises a *Blakely* challenge,[6] claiming that *People v Drohan*, 475 Mich 140, 164; 715 NW2d 778 (2006) (finding that Michigan's indeterminate sentencing scheme is unaffected by *Blakely*), was wrongly decided. However, as we are bound to follow Supreme Court precedent on this matter, we reject this claim outright. *People v Tierney*, 266 Mich App 687, 713; 703 NW2d 204 (2005).

Affirmed.

---

[6] *Blakely v Washington*, 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004).