*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
May 11, 2023

v

No. 359001
Otsego Circuit Court
LC No. 20-005893-FH

KYLE EDWARD STRAIGHT,

        Defendant-Appellant.

Before: GADOLA, P.J., and GARRETT and FEENEY, JJ.

PER CURIAM.

A jury convicted defendant of three counts of possession of child sexually abusive material (CSAM), MCL 750.145c(4)(a). On appeal, defendant challenges the sufficiency of the evidence supporting his convictions, arguing that the prosecution did not prove the identity element. We affirm.

## I. BASIC FACTS AND PROCEEDINGS

While driving to work in late November 2019, defendant retrieved from the center console of his vehicle an SD card[1] (the "card"), which he had placed there a few months earlier, and inserted it into his phone. The card contained images of what defendant described as "child pornography." While sitting roadside for around 20 minutes, defendant viewed and then deleted images until he was almost late to work. After work that day, defendant discussed with Victoria Straight ("Victoria"), his then live-in ex-wife, the card and its contents. Victoria testified that, at that time, defendant told her that he had asked his brother, Cody Hamilton, about placing the images on the card, but did not accuse Hamilton of doing so. After her discussion with defendant, Victoria turned the card over to the police.

---

[1] The expert witness in this case, Craig Baumgartner, defined "SD card" as "a small multi-media device that is usually inserted into a cell phone or into a computer in order to go through and extend the amount of potential data storage space."

Defendant agreed to be interviewed by detectives early in their investigation. During the interview, defendant initially denied ownership of the card. But after being told that the card contained a video of defendant and his child, defendant admitted that he owned it. Defendant offered multiple theories for how the child pornographic images ended up on the card. First, defendant suggested Hamilton was responsible for the images because Hamilton had access to defendant's car and phones. According to defendant, as the detective scrolled through pictures on the card with him, defendant viewed a selfie photograph of Hamilton in front of a mirror. Later, however, defendant explained that he could have accidentally clicked a pop-up advertisement for child pornographic images. Defendant stated that once, about nine years before the interview, such an ad popped up while he was viewing adult pornography, and he immediately shut down and rebooted his computer. As for his two cell phones, defendant insisted that child pornography would not be found on either device. As the interview continued, defendant consented to the police searching and seizing his vehicle, two phones, and two laptops. The card, phones, and laptops were submitted to the Michigan State Police's Computer Crimes Unit (the "Unit") for analysis.

Craig Baumgartner, a civilian analyst in the Unit, completed an examination of defendant's devices. Baumgartner did not find any child pornographic images on the laptops. Defendant's old phone had 573 child pornographic images, and his new phone had 721 such images.[2] Both phones also had adult pornographic images, but Baumgartner believed those images to be personal, rather than from a website. Baumgartner could not determine when the child pornographic images were placed on the phones because the phones had no web history. Consequently, he could not determine whether the child pornographic images were viewed on the same dates as the adult pornographic images. The card contained 637 child pornographic images, as well as adult pornographic videos. Of the 637 images, 235 were downloaded, rather than merely viewed or cached.[3] The 235 images were downloaded on more than two dozen dates between November 2018 and July 2019. Baumgartner, however, could not determine whether the download dates of the child pornographic images corresponded with the date of any adult pornography viewed on websites because there was no web history on the card.

At trial, defendant testified that he did not intentionally seek, download, or possess the child pornographic images. Defendant testified that he believed Hamilton was responsible for the images—even though defendant never witnessed Hamilton view or download such images— because Hamilton had access to defendant's new phone in August through November 2019 when defendant transported Hamilton to and from work. Defendant, along with his cousin, David Blair, and his sister, Stephanie Straight, testified to repeatedly observing Hamilton use defendant's phone. Hamilton, however, testified that he never used defendant's phone.

---

[2] The old phone and the new phone were bought in 2018 and 2019, respectively.

[3] "Cache" is a "set of files kept by a web browser to avoid having to download the same material repeatedly. Most web browsers keep copies of all the web pages that you view, up to a certain limit, so that the same images can be redisplayed quickly when you go back to them." *People v Flick*, 487 Mich 1, 4 n 1; 790 NW2d 295 (2010) (quotation marks and citation omitted).

As noted earlier, the jury convicted defendant of three counts of possession of CSAM. The trial court sentenced defendant to concurrent terms of one year of imprisonment, with 389 days' jail credit, for each conviction, and five years of probation. Defendant now appeals as of right.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support his convictions because the prosecution failed to establish his identity as the person who knowingly possessed CSAM.

## A. STANDARD OF REVIEW

We review a sufficiency-of-the-evidence challenge de novo, in a light most favorable to the prosecution, with any conflicts between evidence resolved in the prosecution's favor, and to determine whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt. *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016). De novo review means that we consider the legal issue independently and without deference to the trial court's conclusion. *People v Harverson*, 291 Mich App 171, 176; 804 NW2d 757 (2010). That said, we do not interfere with the jury's role in deciding the credibility of the witnesses. *Solloway*, 316 Mich App at 180. Circumstantial evidence and reasonable inferences therefrom can prove an element of a crime, including a defendant's intent. *Harverson*, 291 Mich App at 175, 178. "[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Due process requires the evidence to show guilt beyond a reasonable doubt to sustain a conviction. *Harverson*, 291 Mich App at 175.

## B. ANALYSIS

Defendant was convicted of possession of CSAM under MCL 750.145c(4):

> A person who knowingly possesses or knowingly seeks and accesses any child sexually abusive material if that person knows, has reason to know, or should reasonably be expected to know the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child is guilty of a crime . . . .

CSAM is defined as any depiction of a child engaging in a "listed sexual act." MCL 750.145c(1)(o).[4] Possession occurs when a person "knowingly has actual physical control or

---

[4] MCL 750.145c(1)(o) provides in full:

> "Child sexually abusive material" means any depiction, whether made or produced by electronic, mechanical, or other means, including a developed or undeveloped photograph, picture, film, slide, video, electronic visual image, computer diskette, computer or computer-generated image, or picture, or sound recording which is of a child or appears to include a child engaging in a listed sexual act; a book, magazine, computer,

-3-

knowingly has the power and the intention at a given time to exercise dominion or control over a depiction of [CSAM]." *People v Flick*, 487 Mich 1, 13; 790 NW2d 295 (2010). Possession need not be exclusive. *Id*. at 14. It can be actual or constructive and shown with direct or circumstantial evidence. *Id*.

Defendant stipulated at trial that CSAM was located on the card and phones. On appeal, he only argues that there was insufficient evidence of identity, which functionally serves as a challenge to the element of possession. We conclude that there was sufficient evidence that defendant knowingly and actually possessed CSAM.

Defendant admitted ownership of the devices and stipulated that CSAM was on them. Defendant stated that in his first encounter with child pornography, nearly nine years before his police interview, he "glimpse[d]" at a pop-up ad of child pornography and "immediately shut down [his] computer and rebooted it." As for his encounters with the CSAM in this case, defendant testified that for about 20 minutes, he viewed anywhere from 80 to 200 images on the card "one after another" while deleting them. He made this choice up to 200 times—eliminating with each deletion the option of involving the police. Altogether, a rational jury could find that defendant exercised dominion or control over the CSAM on the card.

Defendant speculates that he could have accidentally clicked a pop-up ad of CSAM while viewing adult pornography on his phone. But Baumgartner, an expert in digital and computer forensic analysis, dismissed that possibility. Baumgartner explained that it was not reasonable or plausible to believe that an adult-pornography viewer would accidentally click on an ad and produce the amount of CSAM found in this case—over 1,900 images. That number of images combined with defendant's many affirmative steps—viewing some images for around 20 minutes, intentionally deleting image after image, and deciding to not involve the police—were sufficient for the jury to reasonably infer that defendant did not accidentally stumble upon the images but accessed and controlled them. See *Flick*, 487 Mich at 16. Additionally, a rational jury could infer consciousness of guilt from defendant's initial attempts to conceal evidence. See *People v Kowalski*, 489 Mich 488, 508-509; 803 NW2d 200 (2011).

Defendant argues that he was not the only person who had access to the card or the phones. To begin with, defendant fails to appreciate that possession need not be exclusive. *Flick*, 487 Mich at 14. With respect to the card, defendant testified that he stored the card in the center console of his car, which he frequently used to transport Hamilton to and from work. While there was some evidence that a photograph of Hamilton was on the card, a jury could find that the photograph's existence on the card does not necessarily prove that Hamilton used the card. Defendant was in the car during those trips to and from work, and he never witnessed Hamilton take the card. Defendant also did not dispute Hamilton's testimony that he never borrowed defendant's car. Even

computer storage device, or other visual or print or printable medium containing such a photograph, picture, film, slide, video, electronic visual image, computer, or computer-generated image, or picture, or sound recording; or any reproduction, copy, or print of such a photograph, picture, film, slide, video, electronic visual image, book, magazine, computer, or computer-generated image, or picture, other visual or print or printable medium, or sound recording."

more, as the prosecution mentions, Hamilton had no need for the card because he did not own a phone at the time defendant discovered the CSAM. Altogether, a jury could find that Hamilton's alleged access to the card was not enough to create reasonable doubt as to whether defendant knowingly possessed CSAM.

As for the phones, Blair testified that he witnessed Hamilton use defendant's phone, including "almost every time" defendant was asleep. Stephanie stated that she witnessed Hamilton use defendant's phone daily when she lived at and after she moved out of their mother's home. Defendant, too, asserted that he witnessed Hamilton use one of the phones throughout 2018 and 2019, including when they lived together, as well as during trips to and from work after they lived together. Hamilton testified, however, that he never used defendant's phone. Because we are reviewing a sufficiency-of-the-evidence claim, we must resolve this conflict in the evidence in the prosecution's favor. See *Solloway*, 316 Mich App at 180-181. Not only that, but the record shows that no one ever witnessed Hamilton view or download CSAM while using defendant's phone. In any event, defendant's theory of the case does not alter the fact that the prosecution presented sufficient evidence on each element of the crime. See *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018) ("The prosecution need not negate every reasonable theory of innocence; instead, it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant."). The evidence of defendant's ownership, access, and control of the card and phones was sufficient for a rational jury to conclude that defendant knowingly possessed the CSAM located on those devices.

Lastly, defendant makes a string of arguments about the credibility of witnesses and the weighing of evidence: he argues that the prosecution's witnesses were unreliable and did little to condemn him; he did not conceal any device; he offered a plausible explanation for telling Victoria about the card and its contents; his actions were those of an innocent man; and his witnesses had no concerns with allowing him around their minor children. The jury, however, did not find defendant's theory credible, and we must not interfere with the jury's credibility determinations or weighing of the evidence. See *Solloway*, 316 Mich App at 180.

In sum, defendant's due-process rights were not violated because there was sufficient evidence that he knowingly possessed and controlled CSAM on the devices he owned, which consequently satisfied the element of identity and supported the jury's findings of guilt beyond a reasonable doubt.

Affirmed.

/s/ Michael F. Gadola
/s/ Kristina Robinson Garrett
/s/ Kathleen A. Feeney

-5-